Good morning. You may proceed. Thank you. Good morning, Your Honors. Michael Casey on behalf of the Court of Appeals, I would like to begin by saying that Petitioner failed to prove two components of her case. One, that she didn't prove an accident arose out of in the course of her employment. And second, she didn't prove the causal connection necessary to adjudicate benefits under the Act. Under the circumstances of this case, I think those two issues are a bit more connected than they are in the typical case. You realize the far-reaching implications of your position here? I'm sorry, Your Honor. I said, are you aware of the far-reaching implications of your position in this case? Every person who travels in the corporate world extensively, the company would extensively be liable any time somebody gets ill as a result of airline travel. I mean, that has the potential to be argued if we were to oppose your position. You realize that? I'm talking about a quantum leap forward in different areas. This would be a major leap forward. What I'm saying is that if a job exposes her to a risk, if her job exposes her to a risk and that risk is intimately associated with performance of her job, traveling back and forth, that the condition that she developed, that is, those emboli, were caused by that exposure to that risk, then we prove the case. Well, theoretically, but that's where it breaks down. There's two points I want to raise with you. I want to clarify something. She said her job involved 100 percent travel, but she actually flew about three hours a week, correct? That's correct. So that's the total. So 100 percent travel, it isn't like she's flying 30 hours a week, right? Okay. Secondly, I'm searching the record. Other than being able to raise, and I will admit based on your doctor's testimony that air travel is a risk factor for developing pulmonary emboli, okay, I think I can accept that, where is any causal connection, testimony, or opinion that what she sustained in this case was, in fact, the result of the travel, that the pulmonary emboli was caused by her air travel? Do we have that here? There is no direct testimony on that. That's quite clear. And I start out by saying this is kind of a case where those two issues are connected. One might, you might say to me, well, Mr. Casey, isn't this really similar to like a repetitive trauma, where you have told us, you know, in a repetitive trauma, you better darn well have an expert testifying to that connection, because how do we know that the repetitive trauma was the cause of that issue? It was just typically done, is it not? You would have an expert testifying. If this was a repetitive trauma, I would have an expert on that particular issue, because you've told us how important that is. So where is the expert in this case that connects the pulmonary emboli with the travel? So then you ask me, well, why don't you have it here? Because this is not a repetitive trauma case. This is similar to a repetitive trauma case. In a repetitive trauma case, when you stop the source of the development of the carpal tunnel syndrome, the carpal tunnel syndrome continues. In this particular case, when the source of the emboli was removed, the flying, the emboli no longer developed. That's the unrebutted testimony in this evidence is when she stopped flying, no more emboli. Whoa, whoa, whoa, whoa. What did Dr. Kahle say? I'm sorry? What did Dr. Kahle say? Dr. Kahle said she may well have been developing emboli in all of those four prior episodes when she came in for diagnosis of pneumonia. What Dr. Kahle said was there is no reasonable relationship that one could attach to a pulmonary emboli in the claimant. That's what he said, and that's a quote. And what have you got to counter that? Do you have Dr. Eichen, what? Eichen? Ithokin. And what did he say? Dr. Ithokin said that she had no risk factors for developing pulmonary emboli other than frequent air travel. But how did he couch his opinion? Pardon me? How did he couch his opinion? In terms, he didn't say it with medical certainty. He did not state it was not. He says it may have been caused by her frequent flyers. Exactly. Is that an opinion that supports an award? That's exactly right. Is that an opinion that supports an award? Can that opinion support an award? It may? Under the circumstances and facts of this case with the other evidence in this case? Yes. In the face of Kahle's opinion, based on a reasonable degree of medical certainty, there is no relationship? Kahle's, the basis of Kahle's opinion was, although risk, flying is a risk factor, I admit that, despite all the issues of whether the arbitrator and the commission said, misquoted him or misunderstood him on an essential point, that sticking that not in there, it is not, clearly what he said, it is a risk factor, but I cannot say with certainty to make that connection because she may well have had these four episodes before, may well have been pulmonary emboli, and it seems to me reasonable that they were, and if they were, then that whole connection falls apart. But they weren't. The evidence in this record demonstrates that at least one where there's evidence. There's a tremendous confusion, Mr. Casey, amongst, actually, the workers practicing BAR. Yes, an expert doctor can testify, may or could have, but that only supports the notion that this type of activity could cause this injury. That's competent, but it is absolutely no evidence that it did. If I can exclude all other risk factors. But you can't in this case. You can't. There are other risk factors here where it could have caused it. So what you're sitting with is you're sitting with a situation where one doctor says it may have done it, and another doctor says there is no reasonable relationship that can be attached to a reasonable degree of medical certainty, which means the case fails in proof. It has to fail in proof. Someone has to give evidence of causation somehow. I indicated that under a chain of events analysis. Well, how long had she been flying for this company? So that works against her. She was working for the employer in April 2000, as I read in the record, but it was seven years later she was diagnosed with a pulmonary embolism, correct? Right. Okay. So how does that support your argument that the air travel caused it? Because all of the other medical evidence in this record demonstrates that she had no risk factors. The first doctor who saw her in Virginia said she's got no risk factors. He knew she had sickle cell anemia. He knew she had, took her whole history. She's got no risk factors except for frequent flying to develop this. How about family history? Her father died because of that family history of pulmonary embolism, didn't he? He did. He did. So does that permit us to speculate? Does that permit us to speculate or anybody else to speculate that, well, it was the same thing? So you're basically Did any doctor offer any evidence on that issue? No. You're saying that somebody who flies three hours a week is likely to develop Three hours a week. There is no doctor in this record who was under the impression that she was in an airplane 100% of the time. And the statement that my job is 100% travel is accurate. It's true. Her job was Right. Get on a plane, fly out to some But it's a little misleading because she's only in an airplane three hours a week, correct? Correct. And her family doctor, her family doctor and all the doctors she told, she explained what her job was. I go out to Virginia and I come back. Frequent air flight, back and forth Did you listen from these doctors, what is it about the nature of the air travel and being in an airplane that makes anyone more subject to pulmonary embolisms than somebody traveling in a car or in a train? I don't know that a doctor knows. There's no testimony on that. But the testimony is from all of the doctors, it is a risk factor. Every doctor, every doctor, even the IME said, or the medical records doctor said, it is a risk factor. Well, we could parse back and forth, but you're asking us to find that the doctor's testimony that it's a legitimate risk factor equates to establishing a causal connection. I am not. Then how do we get to the causal connection part of it? You have to have other testimony from the doctor. And do you have it? I do. What is it? It is that she has no other risk factors. She has no other risk factors. A, no other risk factors other than frequent air travel. B, she was told by Dr. Estefan, don't fly anymore. She didn't fly anymore. And she has never again had an episode of pulmonary embolism. Family history is not a risk factor? Pardon me? Family history in the medical arena is not a risk factor? I'm sorry. Family history could not be considered a risk factor? There were a family history. Okay. They said she has no, she has no, I'm quoting the medical records. I can't speculate whether family history is a risk factor. You know, you've got to listen here a little bit. You can't speculate that family history is a risk factor that caused this condition, but you're perfectly willing to speculate that air travel was. No, I'm not speculating that air travel was because the doctor said it was. No, no, no. Doctors only said it was a risk factor. Not a single doctor gave an opinion that it was caused by air travel. Not a single doctor. Well, that's a bit different. May have. A doctor said it didn't. That was K.O. It could not state within a reasonable degree of medical certainty. Where's your causation evidence? When I started, I said the issues of arising out of a causation here are a little more than in most cases of getting hit by a forklift because of an accident. That's why it's similar to, similar to a carpal tunnel syndrome case, a repetitive problem, but it isn't the same as a carpal tunnel syndrome. You say to me, well, Casey, why can't any doctor come in here and say, well, she's got a risk factor for this, and then ask the commission to therefore award benefits? Because, in this case, I have more than that. In this case, I have medical testimony excluding all the other stuff. In this case, I have doctors telling her, don't fly anymore. She doesn't fly anymore. She doesn't get an offer again. I say all reasonable fact finders, every reasonable fact finder with that evidence would say, I think by preponderance of evidence, you've won that case. So you want us to, in this case, in the case of airline travel, dispense with the well-settled requirement of a causal connection opinion. You want us to dispense with the requirement of a direct causal connection opinion. As you have in the past, as you have in the past, it's indicated a, as you have in the past, when you said a doctor's opinion is not necessary in every case. That's a chain of events argument. Sorry? That's a chain of events argument. Exactly right. How long did she work for the airlines? She started in 2000. Or how long did she fly regularly? Started in 2000. The accident was 2007. And what difficulty did she have with flying prior to 2007? She was in and out for pneumonia, but she was never diagnosed with pulmonary edema. So you want us to say that because she had good health and had absolutely nothing while she was flying, that because she flew for the seventh year, there's a causation? Only because the doctor said that. Which doctor said that? Only because the doctor said that's the only thing that we can lay our hands on. No. The only thing the doctor says is it may. That's all he said. That's the only opinion you have. It may. As I have admitted, there's no specific testimony. With a reasonable degree of medical certainty, I, my opinion that this condition was caused by. No doctor said that. Thank you, counsel. Counsel, you may reply. Thank you, your honors. Good morning. May it please the court, James Kinzier on behalf of Apelli Respondent Oracle Corporation. I would like to start off really quickly with the commission's finding regarding medical causation. The commission relied on several facts in this case as we have just went over to support their decision. And one is first that there's no medical evidence. There's no medical evidence that the petitioner's pulmonary emboli was causally related. Second was that Dr. Atconin's report indicated as your honors have mentioned already. When you said causally related, how do you define that causally related? Medical causation, your honor. Cause related to the airplane travel, cause related. So opposing counsel's position that says it may have contributed to the development of this pulmonary embolism? May in part somewhat have also or have contributed to the pulmonary embolism. And that doctor also said in the same sentence or actually in the second sentence in that opinion that the petitioner's sickle cell hemoglobin, I'm sorry, hemoglobin sickle cell disease may have also contributed somewhat. As the commission found based on the supporting, I'm sorry, as the commission found, may in part does not arise at the level of medical certainty to establish medical causation in this case. And that would be Respondent's argument as well. All right. He's conceded that he doesn't have a causal connection opinion. Correct. However, he is raising the specter that he doesn't need it. He's saying that the chain of events doctrine, and you're aware of the chain of events doctrine, is the functional equivalent of establishing compensability here. He doesn't need a causation opinion. What's your response to that? I still think it's a factual question. I still think that it belongs in the manifest weight arena. Just because one court goes ahead and uses the causal chain of connection argument, this Court found both on causation and on accident arising out of it in the court itself. Well, let me take you one further. Assume for a minute we would buy into Mr. Casey's argument that he actually has some evidence of causation. Okay. You take that evidence and match it up against Kale, who turns around and says within a reasonable degree of medical certainty there is no relationship. You have a conflict of medical testimony. Who gets to determine which one they believe? The commission does, Your Honor. And in this case, they believe Kale. That's correct. Even if you accept that argument, you still have to get over the hump that it's the commission that determines which one of the medical opinions they'll buy into. That is correct. Because of their vast expertise. Let's say this decision went against you. Would you be up for your argument? If it went against me? We have Kale. We have his position. No. Well, I would advise my client. I would be here if they asked me to argue. Yes. But I would advise my client not to argue this case because of the manifest weight standard. Okay. Yes. So what you're conceding is there really is no right answer other than the one the commission gives. That's correct. I won't waste any of the Court's time. We ask that this Court affirm the commission's decision. Thanks. Thank you, counsel. Counsel, you may reply. I don't know that I, as I said, I think that the peculiar circumstances of this case are such that it isn't a forklift hitting somebody and it isn't a carpal tunnel case. And the implication that you raise about can anybody come in and say possibly might, could have, does that open up the door? Not in this case. I think if you rule in Petitioner's favor in this case, there are sufficient factual and evidentiary components in this case that are required that don't open up that door that you're fearful of allowing. Thank you. Thank you, Mr. Casey. Thank you, counsel. This matter will be taken under advisement and a written disposition shall issue. The Court will stand in brief recess.